# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8176 | **DATE** | 5/7/2003 |
| **CASE TITLE** | JUANITA ELLISON YOUNG vs. UNIV. OF CHICAGO HOSPITALS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's, University of Chicago Hospitals', motion to dismiss is granted. Plaintiff is granted leave to file an amended complaint within fourteen days of the date of this order.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUANITA ELLISON YOUNG,           )
                                 )
        Plaintiff,               )
                                 )    Case No. 02 C 8176
    v.                           )
                                 )    Honorable John W. Darrah
UNIVERSITY OF CHICAGO HOSPITALS  )
and BERNARD WITTELS,             )
                                 )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Juanita Ellison Young ("Plaintiff"), filed a four-count complaint against Defendants, the University of Chicago Hospitals ("the Hospitals") and Bernard Wittels ("Wittels"), alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e) *et seq.* (Count I); violation of 42 U.S.C. § 1981(a) (Count II); and two state law claims for battery (Count III); and assault (Count IV). The Hospitals move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts I and II. For the reasons that follow, the Hospitals' Motion to Dismiss is granted.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).



"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For purposes of this Motion to Dismiss, the following allegations are taken as true.

Plaintiff, an African-American woman, is employed by the Hospitals as a Registered Nurse. At the relevant times, Plaintiff was assigned to the labor and delivery department. Wittels, a white man, is a licensed physician, specializing in the field of anesthesiology. Both Plaintiff and Wittels are Illinois residents.

On June 13, 2002, while Plaintiff was assisting Wittels in preparation to deliver a baby, Wittels physically attacked Plaintiff. When Plaintiff questioned Wittels' conduct, he made threatening gestures in an attempt to intimidate her. At the time Wittels attacked Plaintiff, the Hospitals had in effect a policy that prohibited aggressive or violent actions directed toward any person. Under this policy, anyone who violated the policy was subject to removal from the premises, arrest and prosecution. Plaintiff reported the incident to Jamie O'Malley ("O'Malley"), the Vice President of Nursing and a member of the Executive Board of Directors of the Hospitals. O'Malley instructed Plaintiff not to call the police and stated that the matter would be handled internally. Another physician stated, "He pushed her, just let the guy apologize."

Plaintiff then went home to calm down. After several hours, Plaintiff returned to the

premises with her husband and summoned the Chicago Police Department. O'Malley then informed Plaintiff that Wittels was not going to be arrested and that Plaintiff should not humiliate Wittels by having him arrested. When Plaintiff asked O'Malley what would have been done if Plaintiff had attacked Wittels, O'Malley replied that Plaintiff would have been terminated and escorted off the premises. When the police arrived, an officer arrested Wittels' and a battery charge was filed against him.

Although the Hospitals were aware of Wittels' violent tendency, they failed to take any action to apply the zero tolerance policy to Wittels' behavior. As a result, Plaintiff was unable to perform her duties.

The Hospitals apply their zero tolerance policy against females and blacks and against the nursing personnel, who are predominately female and/or black, while not applying the zero tolerance policy to its male and white physicians and attempting to conceal male and white physicians' violent behavior.

## DISCUSSION

*Count I*

The Hospitals argue that Count I fails to state a claim for discrimination under Title VII because Plaintiff does not allege that she suffered an adverse employment action or that similarly situated employees who were not in the protected class were treated more favorably.

Under Title VII, it is unlawful to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). In order to allege a *prima facie* case of discrimination under Title VII, Plaintiff must allege that (1) she is a member of a protected class; (2) she suffered an adverse

-3-

employment action; (3) she was meeting her employer's legitimate performance expectations; and (4) her employer treated similarly situated employees who were not in the protected class more favorably. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 751 (7th Cir. 2000).

Count I alleges that on June 13, 2002, while Plaintiff, an African-American woman, was assisting Wittels, a white man, in preparation to deliver a baby, Wittels physically attacked her. Count I also alleges that Plaintiff was meeting the Hospitals' legitimate expectations. At the time Wittels attacked Plaintiff, the Hospitals' zero tolerance policy was in effect. The Hospitals apply their zero tolerance policy against females and blacks and against the nursing personnel, who are predominately female and/or black, while not applying the zero tolerance policy to their male and white physicians and attempting to conceal male and white physicians' violent behavior. The Hospitals "had a . . . pattern and practice of not responding promptly and adequately and . . . [of] discouraging complaints of Nurses [who were] victims of violent and aggressive behavior, especially when the aggressor is a white male physician." (Compl. ¶ 43.) Count I further alleges that as a result of this conduct, Plaintiff has suffered and will continue to suffer the following adverse employment actions: loss of income, employment status, benefits and other emoluments of employment. (Compl. ¶ 45.) Count I also alleges that this conduct created a hostile work environment.

Count I does not adequately plead a claim of sex discrimination under Title VII. Count I adequately alleges that Plaintiff has suffered an adverse employment action. "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002) (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996)

(citation omitted)). Here, Count I alleges that, as a result of the Hospitals' and Wittels' conduct, Plaintiff has lost income, employment status, and benefits. This allegation is sufficient to allege that she has suffered an adverse employment action.

However, Count I fails to allege that similarly situated employees who were not members of the protected class were treated more favorably. Here, Plaintiff claims that members of the protected class were disciplined differently than non-members of the protected class. "[I]n disciplinary cases . . . a plaintiff must [allege] that [s]he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Comparable employees must be similar in all respects. *Spath v. Hayes-Wheels Int'l Indiana*, 211 F.3d 392, 397 (7th Cir. 2000). Count I does not allege that white male nurses were treated more favorably than black female nurses when they violated the zero tolerance policy but, rather, that white male *physicians* were treated more favorably than black female nurses when they violated the zero tolerance policy. Physicians and nurses are not similarly situated employees because they do not have the same performance or qualification requirements. *Radue*, 219 F.3d at 617. Furthermore, Count I does not allege that Plaintiff violated the zero tolerance policy and was disciplined more harshly than a white male nurse who violated the zero tolerance policy. Moreover, Count I does not allege that the Hospitals responded to white male nurses' complaints of violent behavior while not responding to similar complaints by black female nurses. Plaintiff refers, in her response to Defendant's motion, to the exhibits attached to the complaint, which are considered part of the complaint, for the proposition that Plaintiff has pled sufficient facts to establish a *prima facie* case of employment discrimination. However, Plaintiff does not specifically point out where in the complaint or exhibits thereto are allegations that similarly situated persons were treated more

favorably than Plaintiff. Therefore, Count I is dismissed for failure to state a *prima facie* case of discrimination.

## *Count II*

The Hospitals argue that Count II should be dismissed because it fails to allege the existence of a contractual relationship.

Section 1981 states,

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 also provides that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). "[S]ection 1981's protections from racial discrimination are limited to discrimination arising out of a contractual relationship." *Jackson v. Int'l Bhd. of Teamsters, Local Union No. 705*, No. 02 C 2745, 2002 WL 31572544, at *9 (N.D. Ill. Nov. 18, 2002). Thus, in order to state a § 1981 claim, a plaintiff must allege the existence of a contract. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1997).

Count II alleges "[t]he conduct of Defendant [the Hospitals] in refusing to apply its zero tolerance policy against . . . Wittels, a white male, and in openly stating that it would have applied said policy against Plaintiff, a black female, deprived Plaintiff of her equal rights as guaranteed by the federal law." (Compl. ¶ 51.) Count II also realleges some of the previous allegations in the

-6-

complaint. The complaint does not allege the existence of a contract of employment between Plaintiff and the Hospitals. Therefore, the complaint does not adequately plead a § 1981 claim; and, therefore, Count II is dismissed.

## CONCLUSION

For the reasons stated herein, Defendant's, University of Chicago Hospitals', Motion to Dismiss is granted. Plaintiff is granted leave to file an amended complaint within fourteen days of the date of this Order.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: May 7, 2003